**OHIO VALLEY TRAIL RIDERS,
et al., Plaintiffs,**

v.

**Benjamin WORTHINGTON,
et al., Defendants.**

**No. CIV.A. 99–131.**

United States District Court,
E.D. Kentucky,
London Division.

July 10, 2000.

Garland Lewis Arnett, Jr., Salyersville, KY, Paul A. Turcke, Moore, Smih, Buxton & Turcke, Boise, ID, for Plaintiffs.

Mason Moore Kessinger, U.S. Atty's Office, Lexington, KY, Lois J. Schiffer, Albert C. Lin, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Defendants.

### MEMORANDUM OPINION
### AND ORDER

COFFMAN, District Judge.

This matter came before the court for oral argument on June 23, 2000 on the

parties' cross-motions for summary judgment (Nos. 26 and 34). Having considered the arguments of counsel and reviewed the record, the court will deny the plaintiffs' motion and grant the defendants' motion.

## FACTUAL BACKGROUND

The plaintiffs, organizations advocating the interests of motorized recreation, contest the Forest Service's response to the use of off-highway vehicles ("OHVs") in the Daniel Boone National Forest (the "Forest").[1] The Forest is managed by the U.S. Forest Service (the "Service") pursuant to various federal statutes.

The National Forest Management Act ("NFMA"), 16 U.S.C. § 1600, et seq., establishes a two-tiered management system for national forest resources. First, overall management is governed by Forest Plans ("Plans"), which provide "programmatic" or "program-level" directions and guidelines for each national forest for a period of approximately 15 years.[2] 16 U.S.C. § 1604. Second, the Service implements the Plan by proposing and assessing individual "site-specific" projects. *Id.* Both programmatic and site-specific decisions must be formulated "and implemented to protect land and other resources, promote public safety, and minimize conflicts with other uses of the National Forest System lands." 36 C.F.R. § 219.21(g).

The current Daniel Boone National Forest Plan was adopted in 1985 and provides for the management of recreation, wilderness, wildlife and fish, range, timber, water, and minerals. The Plan's goals for the Forest include management of historic, cultural, and natural resources, enhancement of habitats for threatened and endangered species, protection and improvement of soil and water quality, and a broad spectrum of recreational opportunities. The 1985 Plan generally permits OHV use on roads and trails but prohibits OHVs where necessary to protect the Forest's water, wildlife and soil resources. Prior to the decision at issue here, the Forest also included 540 miles of "user-developed" OHV routes, which were unplanned and not surveyed for environmental impact. The Plan requires ongoing monitoring of the impact of OHV use and expressly states that additional closures may become necessary.[3] The Service is authorized to restrict or prohibit OHV access if monitoring reveals current or potential adverse effects on the Forest's visitors or resources. 36 C.F.R. § 295.2. The agency may also designate areas and trails as closed to OHVs if their use causes "considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat, or cultural or historic resources." 42 Fed.Reg. 26,959 (1977).

In response to public pressure, the Service formed an OHV Interdisciplinary Team (the "Team") to evaluate the impact of OHV use on the Forest's resources and to make recommendations regarding the Forest's OHV management policy.[4] The

1. OHVs and the related term, "ORVs" (off-road vehicles), include four-wheel-drive utility vehicles, pickup trucks, rail buggies, motorcycles, and all-terrain vehicles. Included in this category are "street-legal" OHVs, which may be used on open public roads if they comply with state motor vehicle laws and registration requirements.

2. The formulation of a Plan must include an evaluation of the environmental effects of recreational uses of the Forest, the recreational preferences of user groups, and recreational opportunities on Forest lands. 36 C.F.R. § 219.21.

3. According to the plaintiffs, the Plan's "open-unless-closed" policy permits OHV use on all but 126,278 acres of the Forest. OHV use is not permitted on 264 miles of the Forest's 554-mile trail system. OHV users have access, however, to 554 miles of user-developed trails. Therefore, prior to the decision at issue here, OHV use was permitted on approximately 564,722 acres of land, including 830 miles of trails.

4. In 1995 and 1996, the citizens' group Kentucky Heartwood filed two notices of intent to bring enforcement actions against the Service for violations of the Endangered Species Act (the "ESA") stemming from OHV management. In explaining the need for an Environmental Impact Statement on the subject, the Service cited increased recreational use of

Team gathered information through personnel discussions and site visits to six of the seven Forest Ranger Districts. In response to the Team's findings and conclusions, the Service announced its intent to consider changing its OHV management policy. The Forest Supervisor (the "Supervisor") solicited public comments on "how to manage OHV use on the Forest." Ranger Districts were directed to provide lists and maps of existing routes which were potentially suitable to be designated OHV trails.

In November 1997, the Service issued a Draft Environmental Impact Statement ("Draft Statement") identifying environmental problems stemming from OHV use. The Draft Statement also described seven alternative solutions to the alleged problem but discussed only four in detail.[5] The Draft Statement recommended the adoption of Alternative D, which provided more OHV trail mileage than the other three alternatives receiving detailed analysis. Alternative D eliminated all cross-country and user-developed trail use but created an initial OHV trail system of 122 miles, with 76 miles immediately available and the remainder becoming available after environmental analyses. Alternative D also permitted the continued use of street-legal OHVs on Forest roads which are open for public use. This alternative effected a 91% reduction in the availability of OHV trail mileage.

The plaintiffs submitted comments on the Draft Statement during the 60-day public comment period provided by the Supervisor, who treated the decision as a nonsignificant amendment to the Forest Plan.[6] After analyzing these comments, the Service released its Final Environmental Impact Statement ("Final Statement"), which adopted a slightly modified version of Alternative D, providing for OHV use on an initial route system of approximately 117 miles, 73 miles of which would be immediately available. The Final Statement stated that the selection of Alternative D was based on that alternative's "potential to provide the most public benefits while protecting the resources." According to the Service, Alternative D would "supply a mixture of OHV opportunities" but also "respond to environmental values and conditions desired by the public." The Final Statement also contemplated the development of future routes "if appropriate." Because it required a shift from an "open-unless-closed" to a "closed-unless-open" approach, the Final Statement implemented both a forest-wide decision to restrict OHV use and also site-specific, project-level decisions designating certain trails as appropriate for OHVs.

The plaintiffs' timely administrative appeals were rejected in an August 1998 written decision which affirmed and authorized the implementation of the Final Statement. The plaintiffs claim that the Service's decision to reduce OHV riding

OHVs in the Forest, increased dependence on OHVs as a means of daily transportation, an expanding variety of OHVs, a lack of appropriations for trail construction and maintenance, new federal listings of threatened and endangered species, and increased impact on soil and water due to OHV use.

5. As discussed below, the three alternatives eliminated from detailed consideration were analyzed but rejected by the Team during its environmental analysis process. All alternatives considered by the Team are outlined below.

6. Amendments to Forest Plans may be either "significant" or "nonsignificant." 36 C.F.R.

§ 219.10(f). Following factors outlined in the Forest Service Handbook, the Forest Supervisor determines whether an amendment is significant or nonsignificant. *Id.* If the amendment is deemed "significant," the Supervisor must follow the same procedure as that required for the development and approval of a Forest Plan. If the amendment is "nonsignificant," it may be implemented after "appropriate public notification and satisfactory completion of NEPA procedures." *Id.;* see infra n. 7. Here, the parties apparently agree that the Draft Statement regarding OHV Management was treated as a nonsignificant amendment. The plaintiffs' challenge to the propriety of that classification is discussed below.

areas and trail mileage violates the procedural and substantive requirements of the National Environmental Policy Act ("NEPA")[7], the National Forest Management Act ("NFMA")[8], and implementing regulations. The claims are reviewable by this court under the Administrative Procedure Act (the "APA").[9]

## LEGAL ANALYSIS

### A. Standard of Review

Under the APA, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A); *Communities, Inc. v. Busey*, 956 F.2d 619, 623 (6th Cir.1992). "The court is not empowered to substitute its judgment for that of the agency." *Simms v. National Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995).

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made ... Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

### B. Standing

■ The defendants' contention that the plaintiffs lack standing to bring a claim under the NEPA must be rejected. Under the APA, claimants must establish that they have been "adversely affected or aggrieved within the meaning of the relevant statute" by some final agency action. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The NEPA was enacted to "encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man ...." 42 U.S.C. § 4321. Therefore, purely economic injuries will not support a claim under the NEPA. *Nevada Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993); *Competitive Enter. Inst. v. National Highway Traffic Safety Admin.*, 901 F.2d 107, 123–24 (D.C.Cir.1990). Moreover, a "lifestyle loss" will not provide standing for a NEPA claim where "the lifestyle in question is damaging to the environment." *Id.*

■ Here, the plaintiffs do not contend that their OHV "lifestyle" promotes protection of the Forest's resources. The plaintiffs claim, however, that the Final Statement injured their aesthetic and recreational use and enjoyment of the Forest. For example, Randy Block, a member of each plaintiff group, asserts that OHV access enables him to enjoy hiking, swimming, and the observation of wildlife. Due to the Forest's size, he must travel considerable distances on OHVs to enjoy these outdoor activities. Recreational use and aesthetic enjoyment of the environment qualify as interests protected by the NEPA. *Lujan*, 497 U.S. at 886, 110 S.Ct. 3177. Although OHV use itself cannot be deemed beneficial to the environment, the plaintiffs' alleged loss of recreational use and aesthetic enjoyment of the Forest establishes their standing to bring claims under the NEPA.

---

**7.** 42 U.S.C. § 4331, et seq.

**8.** 16 U.S.C. § 1600, et seq.

**9.** 5 U.S.C. § 701, et seq.

## C. Adequate Disclosure of Site-Specific Decisions

An Environmental Impact Statement addressing interrelated "economic or social and natural or physical environmental effects" must "discuss all of these effects on the human environment." 40 C.F.R. § 1508.14.[10] The plaintiffs claim that, by failing to identify precisely which trails are closed to OHVs and by inadequately revealing and discussing the decision's social and economic consequences, the Service failed to comply with NEPA's disclosure requirement.

After visiting Ranger Districts and discussing OHV use with Forest personnel, the Team concluded that "[a]dverse impacts, while often individually correctable, were occurring over such broad areas of the Forest that the Districts were not able to keep the problem under control." The Service then directed individual Districts to provide lists and maps of existing routes which would be potentially suitable designated OHV routes. The Service then excluded routes for which they could document potentially significant adverse impact to Forest resources, or where such impact could not be reduced to an acceptable level without extensive or expensive reconstruction or relocation. Also excluded were routes which had not been adequately analyzed for resource damage. Both the Draft and Final Statements precisely identified routes which would be open under Alternative D, and listed routes submitted by districts as potentially suitable but rejected due to insufficient analyses or the risk of resource damage.

■ The Service was not required by the NEPA to identify precisely which trails are closed to OHVs. *Kelley v. Selin*, 42 F.3d 1501, 1512 (6th Cir.1995) (the NEPA does not require agencies to adopt any particular internal decision-making structure). The agency chose to declare certain trails open to OHVs but to prohibit OHV use in all other areas. The opposite approach—declaring certain trails closed but permitting all other OHV use—was rejected by the Interdisciplinary Team because it would have permitted the expansion of user-developed trails, for which the Service has not conducted site-specific environmental studies. By informing the public that OHV use is permitted only on designated trails, the Final Statement adequately disclosed its effect upon the human environment.

■ Furthermore, the Service adequately disclosed and discussed the decision's social and economic consequences. For example, the Service acknowledged that its decision would not meet all OHV user demands, but also noted that even Alternative D would somewhat affect the Forest's resources. The Final Statement expressly recognized that the policy change could result in increased OHV use on private lands, which are beyond the Service's jurisdiction. Such a shift, the Final Statement conceded, could result in increased impact to natural resources or the prohibition of OHV use by private landowners. The Service also estimated the potential for noncompliance under each alternative and chose Alternative D because it presented a lower risk of noncompliance. The Service also acknowledged that the Final Statement would decrease motorized recreational opportunities in the Forest, although the potential for such a decrease was not as great under Alternative D as under Alternatives B or C. The Service identified a variety of environmental, social, and economic effects flowing from the Environmental Impact Statement, and met its obligation to disclose and discuss them.

## D. Identification of Methodology and Evidence

The plaintiffs next argue that the Final Statement failed to present its technical analysis in the manner required by NEPA.

---

**10.** Such "effects" include "ecological, aesthetic, historic, cultural, economic, social, or health, whether direct, indirect or cumulative." 40 C.F.R. § 1508.8.

"Conclusions that are reached without any study or supporting documentation are insufficient to satisfy an agency's NEPA obligations." *Siskiyou Regional Educ. Project v. Rose,* 87 F.Supp.2d 1074, 1091 (D.Or.1999). Furthermore,

> [agencies] shall identify any methodologies used and shall make explicit reference by footnote to the scientific and other sources relied upon for conclusions in the statement. An agency may place discussion of methodology in an appendix.

40 C.F.R. § 1502.24.

A reviewing court need not, however, "decide whether an [Environmental Impact Statement] is based on the best scientific methodology available, nor does NEPA require us to resolve disagreements among various scientists as to methodology." *Oregon Envt'l Council v. Kunzman,* 817 F.2d 484, 496 (9th Cir.1987). Instead, this court's role is "simply to ensure that the procedure followed by the agency resulted in a reasoned analysis of the evidence before it, and that the agency made the evidence available to all concerned." *Id.* The defendants have satisfied this obligation.

In formulating the Final Statement, the Service properly relied upon the observations and information gathered by the Team through visits to Ranger Districts and conversations with District personnel. Summaries of notes from these field visits and observations of resource damage from OHV use are included in the Administrative Record. The NEPA does not prohibit the Service from relying upon field visits when drafting an Environmental Impact Statement.

■ A Final Statement may rely upon external materials provided that the materials are reasonably available, that statements in the Final Statement are understandable without undue cross-reference,

and that incorporation by reference meets a general standard of reasonableness. *Oregon Envtl. Council,* 817 F.2d at 496. The Service's use of external materials was reasonable and understandable. Because many OHV trails in the Forest were once roadways or are approximately the same width and design as roadways, the Service examined studies regarding erosion and the release of sediment-filled water due to road use. From these studies, which were cited in the text of the Final Statement, the Service reasonably estimated that OHV use in the Forest generated 5,340 tons of sediment per year, but that Alternative D would reduce the sediment yield to 610 tons per year. The Final Statement also referenced a study entitled "Changes in Stream Condition in Response to Off–Highway Vehicle Use in Forested Watersheds of the Daniel Boone National Forest, Kentucky" (the "Wender and Walker study"), which traced the physical degradation of stream channels to OHV use and found evidence of some impact of OHVs on aquatic microinvertebrates.[11] The Service also considered and cited an analysis of OHV management conducted by the Ochocco National Forest. The Final Statement included summaries of these studies and made them available to the plaintiffs upon request. Contrary to the plaintiffs' contention, the statements based on the studies were appropriately cited and required no undue cross-referencing. The agency fulfilled its obligation by looking at appropriate evidence; conducting a reasoned analysis of the evidence before it; and making the evidence available to all concerned. *Id.*

### E.  Substantive Management Standards

The plaintiffs claim that the Service failed to justify its conclusions that OHV use adversely affected the Forest's resources and that Alternative D is the best

---

11. The plaintiffs complain that the Final Statement did not include the text of the Wender and Walker study. The study was, however, cited in the Final Statement's "In-

dex to Documents Referenced." The text of the study was omitted from the Final Statement due to its volume, but the study is available to the plaintiffs upon request.

remedy. As the plaintiffs concede, however, the Service has broad discretion to prohibit or restrict OHV use where necessary to protect Forest resources. 36 C.F.R. § 219.21(g); 36 C.F.R. § 295.2(a)-(b). The Service is not required to adopt any particular methodology for analyzing current and potential impacts from OHV use. *California v. Watt,* 668 F.2d 1290, 1320 (D.C.Cir.1981) (holding that the "choice of methodology" for performing a statutorily mandated analysis will be upheld unless the chosen methodology is irrational).

The Final Statement drew a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. As explained above, the Service relied on various studies documenting the adverse environmental effects of OHV use. According to these studies, OHV use results in increased stream sedimentation and turbidity, which harms many of the Forest's aquatic species. The studies cited in the Final Statement also supported the Service's theory that OHV use can injure, kill, or disturb wildlife. Through on-site investigations, the Team documented erosion and vegetation destruction. Using the evidence collected by the Team as well as external studies, the Service concluded that OHV use adversely affects the Forest's resources.[12] The Service's decision that Alternative D would address environmental problems while also providing recreational opportunities was also supported by appropriate and available evi-

dence. By limiting OHV use to designated routes, the Final Statement sought to curtail the expansion of user-developed trails for which environmental impact studies had not been performed. District personnel selected open routes open to OHVs based on their conclusion that OHV use on those trails would not result in significant adverse effects on the Forest's resources.

■■■ Having detailed the Forest-wide consequences of OHV use, the Service was not obligated to quantify OHV impact on specific sites.[13] Although the plaintiffs allege the existence of better methods for quantifying the effects of OHV use, "within wide limits, the final decision as to how much analysis is necessary in view of the available data must be the agency's, subject to judicial review only for obviously incorrect results or methodology." *Massachusetts v. Andrus,* 594 F.2d 872, 886 (1st Cir.1979). Here, "flaws of such magnitude have not been shown." *Id. See also Britt v. United States Army Corps of Eng'rs,* 769 F.2d 84, 91 (2d Cir.1985) (holding that NEPA "does not require that all impacts be discussed in exhaustive detail but only that the [Environmental Impact Statement] furnish such information as appears to be reasonably necessary under the circumstances for the evaluation of the project"); *Izaak Walton League v. Marsh,* 655 F.2d 346, 377 (D.C.Cir.1981) (holding that where "adverse environmental impacts are not likely, expensive and time-consuming studies are not necessary").

12. Under the Endangered Species Act (the "ESA"), federal agencies must consult with the U.S. Fish and Wildlife Service (the "FWS") to ensure that their actions do not jeopardize endangered or threatened species. 16 U.S.C. § 1536(a)(2). Here, the FWS concurred with the Final Statement, and noted that continued "implementation of the present OHV policy would likely lead to the expiration of [endangered or threatened] species." The FWS also concurred in the Service's determination that Alternative D would avoid adverse effects on federally listed species and would satisfy the Service's obligations under the ESA.

13. The plaintiffs insist that the better method for addressing the negative impact of OHV use would have been to perform site-specific analyses on each individual trail. This method, however, would have required the defendant to close all OHV trails until site-specific studies could be completed. The approach urged by the plaintiffs, therefore, would not only have protected the environment at too great a cost, but also would have hampered the plaintiffs' OHV use to a far greater extent than the approach chosen by the Forest Service.

The Service's assertion of a correlation between OHV use and environmental harm and its selection of Alternative D as the best balance of recreational and environmental needs were amply supported by observation and by technical studies. Neither the identification of the problem nor the chosen solution may be deemed irrational or obviously incorrect.

### F. Reasonable Range of Alternatives

■ The plaintiffs claim that the Final Statement set forth an inadequate range of alternatives, violating NEPA's requirement that such a statement "explore and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14. An agency's consideration of alternatives, however, is "bounded by some notion of feasibility." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 551, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). An agency need not consider every conceivable alternative. *Kentucky ex rel. Beshear v. Alexander,* 655 F.2d 714, 718 (6th Cir.1981). The level of specificity with which an Environmental Impact Statement must examine alternatives is a matter of agency discretion, and should be overturned only if the range of alternatives is "so inadequate as to be an abuse of [the agency's] discretion." *Id.*

The Team initially considered seven alternatives but rejected three for reasons explained in the Final Statement.[14] The Draft and Final Statements examined four of the seven alternatives in detail. Alternative A, a no-action alternative, would have permitted continued OHV use in the manner described in the 1985 Forest Plan. Alternative B was narrowly drafted to permit OHV use only by street-legal vehicles on public roads. Alternative C would have permitted OHV use on public roads and on a 24–mile system of designated routes. Alternative D, which was ultimately selected, permitted street-legal OHV use on public roads and all other OHV use on designated routes initially covering 117 miles, with 73 miles immediately available. The designated routes under Alternative D were routes for which District personnel could determine that OHV use would not cause significant adverse impact to Forest resources. The chosen solution also contemplated the designation of additional routes "after appropriate site-specific environmental analysis and public involvement."

Relying on *State of California v. Block,* 690 F.2d 753 (9th Cir.1982), the plaintiffs claim that the defendants violated NEPA by failing to examine an alternative which provided an OHV trail system exceeding the 117 miles (with 73 miles immediately available) provided by Alternative D. The *Block* court invalidated an Environmental Impact Statement which designated a portion of a national forest as part of a review-and-evaluation program. None of the eight alternatives examined in that Statement allocated more than one-third of the forest at issue to the program. The court concluded:

> [T]he final [Environmental Impact Statement] does not explain how the cut-offs were initially assigned or why they change radically between alternatives. Although NEPA does not require the Forest Service to select any particular cut-off, we conclude that the Forest Service's statutory responsibility to explain

14. As explained in the Final Statement, Alternative E would have permitted OHV use on all existing and acceptable routes, eventually limiting OHV use to designated routes. This alternative was rejected due to the Team's conclusion that it would not provide adequate environmental protection. Alternative F would have allowed OHV use on a system of designated routes designed to meet OHV user needs and to facilitate certain types of OHV experiences. Due to the time and expense deemed necessary to undertake the study required to implement this alternative, the Team eliminated it from detailed analysis. Indeed, a detailed analysis of Alternative F would have consumed as much time as implementing it. Alternative G, which would have set aside a designated area of the Forest for OHV use, was rejected due to the Team's conclusion that it would not meet the needs of local users who employ OHVs as a method of daily transportation.

its decision requires it to justify the cut-offs it considered.

*Id.* at 768–69.

Here, however, the Service justified its decision to provide 117 miles of designated OHV trails, with 73 miles immediately available. To meet the needs of OHV users, the Service rejected alternatives providing less mileage than Alternative D. Alternatives proposing greater mileage were rejected by the Team because they did not address the immediate need to curtail the adverse impact of OHV use. Although the Final Statement did not extensively analyze the alternatives rejected by the Team, Alternatives E, F, and G and the reasons for their rejection were discussed in sufficient detail "to enable a reader to evaluate the analysis." *Natural Resources Defense Council v. Callaway,* 524 F.2d 79, 92–93 (2d Cir.1975).

The plaintiffs also claim that the Service should have considered management prescriptions to mitigate OHV impact instead of reducing trail mileage and eliminating cross-country use. The Service did, however, consider the management prescriptions proposed by the plaintiffs. For example, the plaintiffs suggest a trail system with seasonal or temporary closures, the closure of certain sites to certain types of vehicles, and the installation of stream-crossing structures and run-off devices. Alternative D includes each of these management prescriptions.[15] Similarly, the plaintiffs' complaint that the alternatives should have provided for additional mileage conditioned upon maintenance or site preparation ignores the Final Statement's express recognition that additional routes may be designated in the future.

■ Finally, contrary to the plaintiffs' assertion, the Final Statement described and analyzed each alternative separately. Concededly, similarities exist in the descriptions and analyses for each alternative because each alternative recognizes the need for some reduction in OHV use. The alternatives differ, however, in the amount of restrictions imposed. The range of alternatives was "sufficient to permit a reasoned choice of alternatives so far as environmental aspects are concerned." *National Park & Conservation Ass'n,* 54 F.Supp.2d at 22.

## G. Nonsignificant Amendment to Forest Plan

The plaintiffs claim that the Service's decision to designate the Final Statement as a "nonsignificant" amendment to the Forest Plan was arbitrary and capricious. Regulations implementing the NFMA provide that after "an analysis of the objectives, guidelines, and other contents of the forest plan, the Forest Supervisor [is to] determine whether a proposed amendment would result in a significant change in the plan." 36 C.F.R. § 219.10(f). A change deemed nonsignificant may be implemented after "appropriate public notification and satisfactory completion of NEPA procedures." *Id.* A significant change, however, requires adherence to "the same procedure as that required for development and approval of a forest plan."[16] The Forest Service Handbook guides the Supervisor's determination of whether an amendment is

---

15. Alternative D includes a trail with seasonal restrictions and provides for seasonal or temporary closures of other trails if necessary. The 117 miles of designated routes under Alternative D are open only to vehicles less than fifty inches wide, while street-legal vehicles may continue to use the 1700 miles of county and Forest Development roads. Appendix E of the Final Statement outlines the reconstruction of stream crossings and other trail repairs which are required under Alternative D to reduce adverse environmental impacts of OHV use on designated trails.

16. The procedure required for the promulgation of a forest plan involves identification by an interdisciplinary team of a purpose and need, adherence to specific planning criteria, an analysis of production potential for goods and services, projections of demand, the formulation and evaluation of alternatives, the preparation of an environmental impact statement pursuant to NEPA, and approval by the Regional Forester. 36 C.F.R. § 219.10(b), (c); § 219.12.

significant or nonsignificant, using factors such as timing, location, size, goals and objectives, and management prescriptions.[17] Because applicable regulations "expressly commend [ ] the determination of the significance of [ ] an amendment to the Forest Supervisor's judgment," and because this determination "is extremely fact bound," judicial review of the determination is deferential. *Sierra Club v. Cargill,* 11 F.3d 1545, 1548 (10th Cir.1993).

■ In *American Wildlands v. U.S. Forest Serv.,* No. 97–160–M–DWM (D. Mont. April 14, 1999), the court reversed the Forest Service's decision that an amendment affecting over 160,000 acres was nonsignificant. Here, the plaintiffs argue that the amount of land affected by the Final Statement prevents its classification as a nonsignificant amendment to the Forest Plan. Concededly, the Final Statement eliminates previously authorized OHV use on approximately 564,722 acres. The factors listed in the Forest Service Handbook, however, are only a "framework for consideration, rather than a binding set of criteria." *Prairie Wood Prods. v. Glickman,* 971 F.Supp. 457, 464 (D.Or. 1997). The size of the area affected, therefore, need not conclusively determine the significance of an amendment. Furthermore, the amendment at issue in the *American Wildlands* court would have reduced a protective canopy across half of a mountain range, and would have placed "activities such as mining, timber, and grazing on par with wildlife conservation." *American Wildlands,* No. 97–160–M–DWM, at 14. The amendment in this case, however, elevates the importance of Forest conservation, consistent with the purposes of the 1985 Plan and the NFMA. Furthermore, canopy reduction can permanently alter a Forest's character, while closed OHV routes may easily be re-opened. Indeed, the Final Statement notes that "changes in opportunities for OHV use on the Forest would not foreclose opportunities in later years." The Service properly applied the factors listed in the Forest Service Handbook, and its classification of the amendment as nonsignificant was neither arbitrary nor capricious.

## H. Withholding or Delaying Management Action

The Service must "annually review off-road vehicle management plans and temporary designations implemented since the last annual review." 36 C.F.R. § 295.6. The plaintiffs claim that the Service is ignoring or unreasonably delaying this duty, thereby committing errors of omission.[18] Generally, an agency action is reviewable under the APA only if the action marks the "consummation of the agency's decisionmaking process ... it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The action must also "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* A plaintiff may invoke a "failure-to-act" exception to the requirement of final agency action where "administrative inaction has precisely the same impact on the rights of the parties as denial of relief." *Sierra Club v. Thomas,* 828 F.2d 783, 793 (D.C.Cir.1987).

■ Here, the plaintiffs may not invoke the failure-to-act exception to the requirement of final agency action because review of the OHV policy would not constitute final agency action even if it were undertaken. In *Ecology Center, Inc. v. United States Forest Serv.,* No. CV 96–142–M–LBE, slip op. at 10 (D.Mont. Dec. 2, 1997), the court rejected a claim that the Service had failed to comply with its statutory duty to monitor, evaluate, and report

---

**17.** The Handbook provides that "[o]ther factors may also be considered, depending on the circumstances."

**18.** For the purpose of the parties' cross-motions for summary judgment, the court will assume that the plaintiffs correctly allege that the Service has failed to meet its review obligations under 36 C.F.R. § 295.6.

the effects of management actions on a forest. Because such duties were "not ends to themselves" but only "steps toward whatever final action subsequently may be taken regarding a forest plan," the plaintiffs could not invoke the failure-to-act exception. Similarly, the required review of OHV policies is merely a step toward a future decision regarding OHV management. Until such a decision is rendered, the Service's performance of its monitoring duty would not produce any final agency action which could be challenged by the plaintiffs.

### ORDER

For the reasons stated above, **IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment is **DENIED.**